NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

GARY LYNN BIBBS, *Appellant.*

No. 1 CA-CR 22-0430
FILED 8-3-2023

---

Appeal from the Superior Court in Maricopa County
No. CR2020-144859-001
The Honorable Joseph S. Kiefer, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Alice Jones
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Mikel Steinfeld
*Counsel for Appellant*

Gary Lynn Bibbs, Tucson
*Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Samuel A. Thumma delivered the decision of the Court, in which Judge Randall M. Howe and Judge Anni Hill Foster joined.

---

**T H U M M A**, Judge:

¶1 This is an appeal under *Anders v. California*, 386 U.S. 738 (1967) and *State v. Leon*, 104 Ariz. 297 (1969). Counsel for defendant Gary Lynn Bibbs has advised the court that, after searching the entire record, he has found no arguable question of law and asks this court to conduct an *Anders* review of the record. Bibbs was given the opportunity to file a self-represented supplemental brief, and has done so. This court has reviewed the record and has found no reversible error. Thus, Bibbs' conviction and resulting sentence are affirmed.

## FACTS AND PROCEDURAL HISTORY

¶2 Viewing the evidence in a light most favorable to sustaining the verdict, *State v. Moore*, 111 Ariz. 496, 497 (1975), one night in November 2020, Phoenix Police Department responded to a shots-fired call in a neighborhood from C.W.[1] C.W. reported two separate rounds of shots took place: the first before she called 911, and the other she observed while she was on the phone. C.W. later testified she was at the front of her house on the second-story balcony when she saw Bibbs standing near the front door of his house against a concrete wall that surrounded the house. C.W. testified Bibbs was shooting a pistol onto the street towards a light pole. C.W. added there was a previous shooting at the same residence days or weeks prior, and called to complain to the homeowners' association after the second shooting.

¶3 Another witness, A.A., testified he was driving down the street and saw a little red car with the door open. As A.A. kept driving, he saw one male turn a corner, running to his car with another male chasing and firing a weapon. A.A. testified he could see the shooter for no more than three to four seconds and remembered the shooter being a "black" man in his 30's wearing "dark jeans" and "a red puffy jacket." A.A. could

---

[1] Initials are used to protect witness' privacy. *State v. Maldonado*, 206 Ariz. 339, 341 ¶ 2 n.1 (App. 2003).

not see where the shooter fled because it was dark. Although A.A. drove away, he later relayed what he saw to a police officer. A.A. said the officer never wrote his name down or followed up with him.

¶4        Police officers arrived on the scene "less than 3 to 5 minutes" after C.W.'s call and, based on the information C.W. provided, took Bibbs and another individual into custody. A search of the area revealed several .45 caliber shell casings in the roadway and in the nearby sidewalk area. A gunshot residue (GSR) test on both individuals revealed GSR was found on Bibbs but not the other individual. No handgun was ever located.

¶5        Bibbs was charged with: (1) unlawful discharge of a firearm, a Class 6 felony (a charge dismissed before the case was submitted to the jury) and (2) misconduct involving weapons, a Class 4 felony, alleging he was a prohibited possessor given prior felony convictions. Although Bibbs originally succeeded in moving to preclude the GSR evidence (based on concessions by the State's expert), this court found the evidence was admissible in a special action proceeding.

¶6        After substantial motion practice, Bibbs was present for all three days of his jury trial held in August 2022. After considering the evidence and argument, the jury found Bibbs guilty of misconduct involving weapons. At Bibbs' request, the superior court polled the jurors on their verdict, and each confirmed it was their true verdict. Given Bibbs' prior criminal history, and without objection, the court sentenced Bibbs as a category two repetitive offender for the nondangerous felony conviction to four years in prison. Bibbs was properly given 31 days of presentence incarceration credit. This court has jurisdiction over his timely appeal pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(1), 13-4031 and 13-4033(A) (2023).[2]

## DISCUSSION

¶7        The record shows that Bibbs was represented by counsel at all stages of the proceedings and that counsel was present at all critical stages. The record contains substantial evidence supporting the verdict. The sentence imposed was within statutory limits and the award of presentence incarceration credit was accurate. In all other respects, from the record

---

[2] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

presented, all proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure. In his 22-page supplemental self-represented brief, Bibbs raises several issues, addressed below.

## I.      Witness Bias.

**¶8**          Bibbs argues "it was a[n] abuse of discretion" for the court to allow C.W. to testify at trial because she called the HOA to complain after the second shooting. Bibbs argues C.W. had a "hidden agenda" against him and that she wanted Bibbs to move out because "she did not like her neighbors activities," and C.W. "stood to gain from testifying." Thus, Bibbs argues, C.W. had bias, "improper influence and motive" in testifying against Bibbs.

**¶9**          "In our system of justice, '[c]ross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested.'" *State v. Todd*, 244 Ariz. 374, 379 ¶ 12 (App. 2018) (citation omitted). "Although trial courts retain broad discretion to preclude 'repetitive and unduly harassing interrogation,' the opportunity to impeach or discredit a witness, rather than merely test his perceptions and memory, is fundamental to confrontation under the Sixth Amendment." *Id.* Bias or interest of a witness affects credibility and weight, not the admissibility of testimony. *Maricopa Cnty. v. Barkley*, 168 Ariz. 234, 240 (App. 1990).

**¶10**          Bibbs' counsel extensively cross-examined C.W. about her actions before the 911 call and her feelings towards Bibbs. Among other things, the jury heard a previous interview of C.W., where she said, "I called the HOA and had them kick him out." C.W. also was asked various questions by Bibbs' counsel about her 911 call.

**¶11**          On the record presented, Bibbs has not shown that the court erred in allowing C.W. to testify. *See State v. Trammell*, 245 Ariz. 607, 609 ¶ 9 (App. 2018) (citation omitted) ("No rule is better established than that the credibility of the witnesses and the weight and value to be given to their testimony are questions exclusively for the jury."). Thus, Bibbs' witness bias arguments fail.

## II.     Inconsistent Witness Testimony.

**¶12**         Bibbs argues there were "witness inconsistencies" involving A.A.'s testimony. At trial, A.A. testified the shooter was in his 30's and wearing dark-colored pants. The evidence shows Bibbs is in his 60's and was wearing light-colored pants when he was taken into custody. Bibbs argues the "inconsisten[t] testimonies did not collaborate in the record of evidence received."

**¶13**         Defense counsel, however, cross-examined A.A. about the claimed inconsistencies. During that exchange, the jury heard information that, on the night of the incident, A.A. stated he thought the shooter was in his 30's and he was certain the shooter was wearing dark pants. Defense counsel showed the jury how A.A. attempted to report the incident to an officer, but the officer never wrote down his name or followed up with A.A. Bibbs' argument about the inconsistent statements go to credibility to be assessed by the jury, not admissibility to be determined by the court, and were adequately addressed during cross-examination. *See Trammell*, 245 Ariz. at 609 ¶ 9. Again, Bibbs has shown no error.

## III.     Insufficient Evidence/GSR.

**¶14**         Bibbs argues that admitting the GSR evidence "was substantial error." Although Bibbs argues the evidence should have been weighed differently, this court does not reweigh the evidence on appeal. *See Montano v. Luff*, 250 Ariz. 401, 406 ¶ 13 (App. 2020) (citation omitted). Moreover, during cross-examination, defense counsel showed the jury how the police officer who conducted Bibbs' GSR test only performed the test twice before. Further, defense counsel showed the jury that the police officer who conducted Bibbs' GSR test touched the front of their police car with their gloves on, to establish a possible contamination theory.

**¶15**         As noted above, in the special action, this court found the GSR evidence relevant because the evidence had a "tendency to make a fact more or less probable than it would be without the evidence," and thus was admissible. *See* Ariz. R. Evid. 401(a). Bibbs has not shown that decision was in error, or that the superior court had to exclude the GSR evidence as presenting the danger of unfair prejudice or any of the other reasons set forth in Arizona Rule of Evidence 403.

**¶16**         Nor has Bibbs shown the superior court erred in denying his motion for judgment of acquittal under Arizona Rule of Criminal Procedure 20. This rule requires the court, on motion at the close of evidence of either side, to enter a judgment of acquittal for any charge if there is no substantial

evidence to warrant the conviction. Ariz. R. Crim. P. (Rule) 20(a)(1). "Substantial evidence is proof that 'reasonable persons could accept as adequate . . . to support a conclusion of defendant's guilt beyond a reasonable doubt.'" *State v. Bearup*, 221 Ariz. 163, 167 ¶ 16 (2009) (citation omitted).

¶17        After the State rested in its case in chief, and after hearing argument from the parties, the superior court determined there was "sufficient evidence to meet the standard or overcome the standard in Rule 20." Additionally, the court also found there was sufficient evidence considering the totality of the evidence including that Bibbs was a prohibited possessor based on the stipulation of the parties, and thus denied the defense's Rule 20 motion. For these reasons, Bibbs' claimed insufficient evidence argument fails.

## IV.    Bibbs Has Shown No Prosecutorial Misconduct.

¶18        Bibbs argues there was prosecutorial misconduct which "caused prejudice to the verdict" because of leading questions during direct examination. Bibbs' brief notes the following question during direct examination in particular: "[w]ould it be toward that light pole and the – further back?" Although that question was objected to, and the objection was sustained, Bibbs argues it was a fundamental error to do so "without calling for [a] mistrial."

¶19        Leading questions generally should not be used on direct examination of a witness except as necessary to develop the witness' testimony, to interrogate an unwilling, hostile or biased witness, or to interrogate on direct a witness who is a representative or managing agent of an adverse party, or a witness whose interests are identified with an adverse party. *See* Ariz. R. Evid. 611(c). Although Bibbs suggests it was prosecutorial misconduct to ask leading questions, defense counsel objected to the question and reasoned the question was leading, and the court sustained the objection. For these reasons, Bibbs' claimed leading questions argument fails.

## CONCLUSION

**¶20**        This court has read and considered counsel's brief and Bibbs' pro se supplemental brief and has searched the record provided for reversible error and has found none. *Leon*, 104 Ariz. at 300; *State v. Clark*, 196 Ariz. 530, 537 ¶ 30 (App. 1999). Thus, Bibbs' conviction and resulting sentence are affirmed.

**¶21**        Upon the filing of this decision, defense counsel is directed to inform Bibbs of the status of the appeal and of his future options. Defense counsel has no further obligations unless, upon review, counsel identifies an issue appropriate for submission to the Arizona Supreme Court by petition for review. *See State v. Shattuck*, 140 Ariz. 582, 584–85 (1984). Bibbs has 30 days from the date of this decision to proceed, if he desires, with a pro se motion for reconsideration or petition for review.



AMY M. WOOD • Clerk of the Court
FILED:    AA